UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| TROY SILVA,<br><br>    Plaintiff,<br><br>v.<br><br>USF REDDAWAY INC.,<br><br>    Defendant. | Case No. 17-cv-01354-LB<br><br>**ORDER DISMISSING CASE**<br><br>Re: ECF No. 7 |

## INTRODUCTION

This employment-discrimination suit is here on removal jurisdiction. Plaintiff Troy Silva claims that his employer, defendant USF Reddaway, Inc., breached a collective-bargaining agreement (CBA), and discriminated against him, by failing to accommodate his recurring shoulder injury by assigning him to a different job.[1] He brings three claims under California state law: one for breach of the CBA; one for "common[-]law disability discrimination"; and one for disability discrimination under California's Fair Employment and Housing Act.[2] The defendant moves to dismiss all these claims, arguing that they are preempted by section 301 of the federal

---

[1] 1st Am. Compl. –ECF No. 1-1 at 6 (¶¶ 6–10). Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 5–7 (¶¶ 5–15).

ORDER — No. 17-cv-01354-LB

Labor-Management Relations Act (LMRA) (codified at 29 U.S.C. § 185(a)).[3] (The plaintiff has conceded that the first claim, for breach of the CBA, is preempted. Only the discrimination claims remain for the court's decision.[4]) The parties have consented to magistrate jurisdiction.[5] This matter can be decided without oral argument. See Civil L.R. 7-1(b). The court thus vacates the hearing that is set for May 18, 2017. The court now holds that LMRA § 301 preempts the plaintiff's claims. Those claims are therefore dismissed without prejudice to any claim that Mr. Silva might have under the CBA or directly under the LMRA.

## FACTS

In 2011, Mr. Silva began working for Reddaway "as a pick[-]up and delivery[-]truck driver, who makes multiple local deliveries every day."[6] "This position requires substantial lifting, pushing, and movement of freight."[7] A collective-bargaining agreement governed the employment relationship between Mr. Silva and Reddaway.[8] This CBA "required defendant not to discriminate against plaintiff . . . , and to comply with the Americans for Disabilities Act."[9] The CBA also contained terms governing worker seniority and the assignment of employees to different jobs.[10] The contract also set out a grievance procedure for resolving labor-management disputes.[11]

"In early 2012, [Mr. Silva] had a recurrence of shoulder pain."[12] He went on leave and "requested accommodation for his disability."[13] Specifically, he asked that he be "transfer[red] to

---

[3] ECF No. 7.

[4] Opp. – ECF No. 12 at 1.

[5] ECF No. 10 at 2.

[6] 1st Am. Compl. –ECF No. 1-1 at 6 (¶ 6). Because this is a Rule 12(b)(6) analysis, the court relates the facts mainly as they are given in the complaint. See *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n. 2 (9th Cir. 2000). The court also considers the contents of the governing CBA.

[7] Id.

[8] Id. at 6 (¶ 7); see CBA – ECF No. 2-1.

[9] 1st Am. Compl. –ECF No. 1-1 at 6 (¶ 7).

[10] See CBA – ECF No. 2-1 at 12–14, 53.

[11] Id. at 20–23.

[12] 1st Am. Compl. –ECF No. 1-1 at 6 (¶ 8).

[13] Id.

ORDER — No. 17-cv-01354-LB         2

long[-]distance line driving, where he would not be required to do as much lifting or pushing freight."[14] Mr. Silva soon returned to work but in his old position; he could not do the freight-handling that this position required and returned to disability.[15] By late August 2012, Reddaway had not reassigned Mr. Silva to a long-distance, line-driving position.[16]

Four years later, Mr. Silva sued Reddaway in California state court.[17] He did not serve Reddaway until February 2017, though, and when he did, it was under the aegis of the operative First Amended Complaint.[18]

The defendant moved the case to this court and now moves to dismiss Mr. Silva's claims as preempted by LMRA § 301.[19]

## GOVERNING LAW

### 1. Subject-Matter Jurisdiction

This case is before the court on federal-question removal jurisdiction under 28 U.S.C. § 1441. Neither party challenges that jurisdiction. The court must consider the issue nonetheless. "[A] federal court has an independent duty to assess whether federal subject matter jurisdiction exists, whether or not the parties raise the issue." *H & K Invs., LP v. Erfe*, 2012 WL 1657744, *2 (E.D. Cal. May 10, 2012), *report and recommendation adopted*, 2012 WL 2841131 (E.D. Cal. July 9, 2012) (citing *United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 967 (9th Cir. 2004) ([T]he district court had a duty to establish subject matter jurisdiction over the removed action *sua sponte,* whether the parties raised the issue or not.")).

The court has jurisdiction, through the LMRA, even though the operative complaint advances only state-law claims. Section 301 of the LMRA establishes federal jurisdiction over "suits for

---

[14] Id.
[15] *Id.* at 6 (¶ 9).
[16] *Id.* at 6 (¶ 10).
[17] Notice of Removal – ECF No. 1 at 2 (¶ 1).
[18] *Id.* at 2 (¶¶ 1–3); 1st Am. Compl. –ECF No. 1-1.
[19] ECF No. 7.

violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). The absence of an LMRA claim from the operative complaint does not defeat removal jurisdiction. "Under the 'artful pleading' doctrine, a plaintiff cannot defeat removal of a federal claim by disguising or pleading it artfully as a state claim. If the claim involved is one arising under federal law, the federal court will recharacterize the claim and uphold removal." *Madison v. Motion Picture Set Painters and Sign Writers Local 729*, 132 F. Supp. 2d 1244, 1250 (C.D. Cal. 2000) (citing *Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394 (1981); *Schroeder v. Trans World Airlines, Inc.,* 702 F.2d 189, 191 (9th Cir. 1983)). "Where a state law claim is completely preempted by federal law, the 'artful pleading' doctrine applies." *Id.* (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law."); *Sullivan v. First Affiliated Secs., Inc.,* 813 F.2d 1368, 1372 (9th Cir. 1987) ("A traditional example of the artful pleading doctrine is one in which the defendant has a federal preemption defense to a state claim and federal law provides a remedy.")).

The defendant here has a preemption defense based on the LMRA — a defense, moreover, that the court upholds — and so this court has subject-matter jurisdiction of this case under 28 U.S.C. § 1441.

### 2. Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). A claim will normally survive a motion to dismiss if it offers a "short and plain statement . . . showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). When considering a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh,* 205 F.3d 1146, 1150 n. 2 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving party. *Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir. 2000). A Rule 12(b)(6) inquiry "may also consider documents" outside the

complaint "whose authenticity cannot be questioned and on which plaintiff's complaint 'necessarily relies.'" *Hotel Employees & Rest. Employees Local 2 v. Vista Inn Mgmt. Co.,* 393 F. Supp. 2d 972, 979 (N.D. Cal. 2005) (quoting *Lee v. City of Los Angeles,* 250 F.3d 668, 688–89 (9th Cir. 2001)); *see also, e.g., Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir. 1998). The defendant in this case has filed the relevant collective-bargaining agreement[20]; Mr. Silva has not disputed its authenticity, and it is central to his claims. The court has therefore considered it in this analysis.

## ANALYSIS

### 1. Preemption Under Section 301 of the LMRA

"A suit for breach of a collective bargaining agreement is governed exclusively by federal law under section 301" of the LMRA. *Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 997 (9th Cir. 1987) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 23 (1983)). "The preemptive force of § 301

> is so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization." [28 U.S.C. 185(a) (codifying LMRA § 301).] Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.

*Madison,* 132 F. Supp. 2d at 1250–51 (quoting *Franchise Tax Board,* 463 U.S. at 23). "Longstanding precedent dictates 'that § 301 mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes.'" *Id.* at 1251 (quoting *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 404 (1988)).

"To promote uniform interpretation of labor contracts, the preemptive range of § 301 has been extended beyond suits that allege violations of such contracts." *Id.* (citing *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 210–11 (1985)). "Thus, a state law claim will be preempted if it is so 'inextricably intertwined' with the terms of a labor contract that its resolution will require judicial

---

[20] CBA – ECF No. 2-1.

interpretation of those terms." *Id.* (quoting *Allis-Chalmers,* 471 U.S. at 213). "If, on the other hand, a claim seeks to vindicate 'nonnegotiable state-law rights . . . independent of any right established by contract,' then it is not preempted." *Id.* (quoting *Allis-Chalmers,* 471 U.S. at 213). "Thus, if a state law cannot be waived or modified by private contract, and if the rights it creates can be enforced without resort to the particular terms, express or implied, of the labor contract, § 301 does not preempt a claim for violation of the law." *Id.* (citing *Miller v. AT&T Network Sys.,* 850 F.2d 543, 546 (9th Cir. 1988)). "In other words, § 301 does not 'grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law . . . .'" *Id.* (quoting *Allis-Chalmers*, 471 U.S. at 212). "Consequently, cases distinguish between state laws that require interpretation of a labor contract and those that prohibit parties from including particular terms in such a contract." *Id.* (citing *Miller,* 850 F.2d at 547).

From these principles the Ninth Circuit has derived the following test for determining whether § 301 preempts a state-law claim:

> [A] court must consider: (1) whether the CBA contains provisions that govern the actions giving rise to a state claim, and if so, (2) whether the state has articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the CBA, and (3) whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract. A state law will be preempted only if the answer to the first question is "yes," and the answer to either the second or third is "no."

*Id.* (quoting *Miller,* 850 F.2d at 548) (citing *Jimeno v. Mobil Oil Corp.,* 66 F.3d 1514, 1523 (9th Cir. 1995)).

Preemption under § 301 is not mechanical. "Following . . . Supreme Court authority," for example, "the Ninth Circuit has explicitly recognized that a claim is not preempted by § 301 if it merely requires reference to, as opposed to interpretation of, the provisions of a collective bargaining agreement." *Madison*, 132 F. Supp. 2d at 1252–53 (citing cases). In other words, "'the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require' that a state law cause of action be preempted." *Id.* at 1252 (quoting *Livadas v. Bradshaw,* 512 U.S. 107, 123 (1994)) (citing *Lingle,* 486 U.S. at 407). Furthermore, "it is the legal character of [a] claim, as 'independent' of rights under the collective-

bargaining agreement (and not whether a grievance arising from 'precisely the same set of facts' could be pursued) that decides whether a state cause of action may go forward." *Id.* (quoting *Livadas*, 512 U.S. at 123) (citing *Jimeno*, 66 F.3d at 1524).

### 2. Case-Specific Analysis: Section 301 Preempts the Plaintiff's Claims

Mr. Silva's claims will likely "necessitate determining whether the CBA imposed an obligation on" Reddaway to offer him a line-driving position or whether, as the defendant claims,[21] its obligations under the CBA prevented it from doing so — which could disprove Mr. Silva's claim that Reddaway wrongfully discriminated against him. *See Madison*, 132 F. Supp. 2d at 1253 ("necessitate"). A material question, in other words, is whether Reddaway "followed the CBA's procedures," *id.* at 1254, and its substantive rules, in declining to reassign Mr. Silva to line driving by August 2012.

Mr. Silva's claims are therefore preempted. *See id.* It is more than just a question of having to "refer" to or fleetingly "consult" the CBA. Whether Reddaway discriminated against Mr. Silva by not assigning him to line driving will need some substantive assessment of the CBA to determine whether the terms of that compact — terms on job assignment and seniority, at least — allowed the defendant to do anything else. That is to say, could Reddaway have assigned Mr. Silva to line driving consistently with its obligations under the CBA? The goal of uniformly interpreting labor-management contracts dictates that the LMRA governs and preempts Mr. Silva's claims. If § 301 did not preempt those claims, then California law would determine a "question[] relating to what the parties to a labor agreement agreed [to], and what legal consequences were intended to flow from breaches of that agreement." *Livadas,* 512 U.S. at 122–23 (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)). Avoiding such situations is at the heart of preemption's rationale. *See id.*

---

[21] *E.g.,* ECF No. 13 at 3 (accommodation claim will require fact-finder to "determin[e] what obligations the CBA imposed upon Defendant with respect to work assignments and transfers, and seniority"), 6 ("Assignment to a particular position, regardless of whether or not it is a requested accommodation for a disability requires that the Defendant follow the terms of the CBA concerning . . . 'Reassignment of Work,' 'Disputes Procedure,' and 'Seniority.'").

The defendant frames the point correctly when it suggests that, at a minimum, the non-discriminatory reasons that it has given for not assigning Mr. Silva to line driving will require considering its duties under the CBA. This too triggers § 301 preemption. *See, e.g., Sullivan*, 813 F.2d at 1372 (preemption defense implicates § 301 jurisdiction).

In terms of the Ninth Circuit's *Miller* test, the instant CBA does "contain terms that govern" the challenged actions, and it does not appear that the court could evaluate the state-law claims "without considering the overlapping provisions of the CBA." *See Miller*, 850 F.2d at 548. The claims are thus preempted.

The plaintiff responds by pointing to his allegation that Reddaway misrepresented to him that line-driving positions were not available. Misrepresentation is not discrimination and (the core argument runs) does not require interpreting the CBA. This does not take Mr. Silva's claims outside § 301. His claims are not for misrepresentation; they are for discrimination.[22] Misrepresentation is not an operative part of the discrimination claims.[23] The misrepresentation allegation is ancillary to his narrative.[24] Even if Mr. Silva were advancing a true fraud claim, moreover, that claim would require assessing the defendant's duties under the CBA; because those duties will reveal whether Reddaway materially misled Mr. Silva about the availability of a line-driving position.

The Ninth Circuit's decision in *Audette* controls this analysis. Though not perfectly identical to this case, *Audette* is like this case in all material ways. It leaves no room for any decision here other than that § 301 preempts the plaintiff's claims. The *Audette* plaintiffs alleged that their employer had failed to register them "as Class B workers under their collective[-]bargaining agreement." *Audette*, 195 F.3d at 1109. They claimed that this refusal breached a settlement agreement that the parties had reached years earlier to resolve the same grievance. *Id.* at 1110. They sued for breach of the settlement agreement and they brought various tort claims, as well,

---

[22] *See* 1st Am. Compl. – ECF No. 1-1 at 6–7 (¶¶ 10, 12–15).
[23] *See id.*
[24] *See id.*

including one for state-law gender discrimination. *Id.* at 1111. The Ninth Circuit, on *de novo* review, found all the claims preempted. *Id.* at 1111–13. With respect to the discrimination claim, the appeals court held that it would need interpreting the CBA to decide whether the employer had a "legitimate nondiscriminatory reason for [its] employment decision." *Id.* at 1112–13. This would include assessing the CBA's terms for transferring workers among different job sites, and authorizing the employer to limit how many workers could be placed into each employment category (such as "Class B") "to conform to the volume of available work." *Id.* at 1112. Section 301 thus preempted the discrimination claim. *Id.* at 1113.

The same result must obtain here. The discrimination claim here is more tightly yoked to the CBA than was the preempted claim in *Audette*. The *Audette* plaintiff's claim was that the defendant employer had discriminatorily breached a settlement agreement. *Id.* at 1110–11. This claim did not "arise under" the CBA, the Ninth Circuit explained, but did "implicate" its terms. *Id.* at 1111–12. In this case, Mr. Silva's theory is that Reddaway discriminatorily breached the CBA itself.[25] More substantively, as in *Audette*, Mr. Silva's claims require asking whether the defendant employer had legitimate reasons for the challenged conduct given its obligations under the CBA. *See id.* at 1112–13. The Ninth Circuit held that this caused § 301 to preempt the *Audette* plaintiff's contractually linked discrimination claim. *Id.* at 1113. And so it does here.[26]

* * *

---

[25] *See id.* at 6 (¶ 10).

[26] By contrast, this suit is unlike cases that have been distinguished from *Audette*, in which a "free-standing" discrimination claim did not implicate the terms of a CBA. *See, e.g., Martinez v. Kaiser Found. Hosps.*, 2012 WL 2598165, at *6 (N.D. Cal. July 5, 2012) (discussing issue) (quoting *Humble v. Boeing Co.*, 305 F.3d 1004, 1012 n. 38 (9th Cir. 2002)); *Audette*, F.3d at 1113 ("free-standing").

## CONCLUSION

The plaintiff's claims are therefore dismissed without prejudice to any claim that Mr. Silva might have under the CBA or directly under the LMRA.

This disposes of ECF No. 7.

**IT IS SO ORDERED.**

Dated: May 15, 2017

_____
LAUREL BEELER
United States Magistrate Judge